UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN DOE,

        Plaintiff,

   v.

CLAIRE LOUISE CARBONE,

        Defendant.

Civil No. 2:25cv199

### ORDER

Pending before the Court are a Motion to Dismiss the First Amended Complaint (the "Motion to Dismiss") (ECF No. 23) and a Memorandum in Support thereof (ECF No. 24) filed by Defendant Claire Louise Carbone ("Defendant" or "Ms. Carbone"), as well as a Motion for Leave to File a Second Amended Complaint (the "Motion for Leave") (ECF No. 25) and a Memorandum in Support thereof (ECF No. 26) filed by Plaintiff John Doe ("Plaintiff" or "Doe"). For the following reasons, the Motion to Dismiss (ECF No. 23) is **GRANTED** and the Motion for Leave (ECF No. 25) is **DENIED**.

**I.    BACKGROUND**

    **A.    Facts**[1]

This case arises from a prior inappropriate sexual relationship between Doe and Ms. Carbone. Doe alleges that Ms. Carbone sexually abused him between 1997

---

[1] In evaluating a motion to dismiss, the Court must accept well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Kensington*

1

and 1999, beginning when Doe was a 16-year-old minor and continuing through approximately one month after he turned 18 years old. First Am. Compl. at 1–2, ¶¶ 13–17, ECF No. 21 ("FAC"). From approximately August 1997 to June 1999, Doe was an international exchange student living with Ms. Carbone and her husband. *Id.* at 9, 16, 19. During this time, Doe alleges that Ms. Carbone initiated inappropriate physical contact with him, including: (1) providing massages while Doe wore only a towel and touching his sensitive private areas such as his groin, inner thighs, buttocks, and pubic area*, id.* ¶¶ 12, 17; (2) placing Doe's head against her chest while dressed in a revealing top without a bra, exposing part of her left breast, *id.* ¶ 13; (3) encouraging him to masturbate and masturbating him, *id.* ¶¶ 14, 16; and (4) digital penetration resulting in Ms. Carbone's orgasm, *id.* ¶ 17. Doe alleges that between January and June 1999, these encounters occurred more than thirty times. *Id.*

Throughout the duration of the alleged abuse, Ms. Carbone repeatedly instructed Doe to keep their sexual activity secret from her husband, Doe's family and friends, school officials, his exchange sponsor, the international scholarship-awarding body, and the authorities. *Id.* ¶ 18. Doe alleges that these instructions instilled in him ongoing fear of shame, exposure, reprisal, the loss of his scholarship, and his status in the United States. *Id.*

---

*Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012). The Court is not, however, required to accept a complaint's "legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991) (quoting *District 28, United Mine Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979)). Accordingly, the Court considers the factual allegations as set forth in the First Amended Complaint when evaluating Defendant's Motion to Dismiss. *See generally* First Am. Compl., ECF No. 21.

The alleged abuse eventually ceased when Doe returned to his home country of Macedonia in June 1999. *Id.* ¶ 19. When he returned to the United States for college in August 1999, Doe confronted Ms. Carbone and informed her that he would not engage in the inappropriate aspects of their relationship anymore. *Id.* ¶ 20. Thereafter until he graduated in 2003, Doe alleges that he attempted to spend as much time away from Ms. Carbone's home as possible. *Id.* ¶ 21. However, he alleges that Ms. Carbone "maintained a possessive and intrusive presence" in his life, and he "remained under her influence" until he graduated from college. *Id.* In 2003, Doe graduated from college, gained financial independence, and moved away from Ms. Carbone. *Id.* ¶¶ 21–22. Before leaving, he confronted Ms. Carbone again and obtained a promise from her that she would not repeat her actions with future exchange students. *Id.* ¶ 22.

In 2022, approximately twenty-five years after the alleged sexual abuse began, Doe began therapy. *Id.* ¶ 23. Doe alleges that, through therapy, he learned for the first time from a clinical psychologist that he suffered from injuries causally connected to Ms. Carbone's alleged sexual abuse. *Id.* He claims that Ms. Carbone's conduct caused him significant and lasting harm, which impairs his daily functioning and quality of life. *Id.* ¶ 25. He has since been diagnosed with Post-Traumatic Stress Disorder, General Anxiety Disorder, Social Anxiety Disorder, and Executive Functioning Deficit. *Id.* ¶ 26. He takes medication and sees a psychologist to treat his diagnosed conditions. *Id.* Doe also alleges that Ms. Carbone's actions have caused him to miss out on employment advancement opportunities, live with shame, and struggle

to maintain relationships, and have made parenting, conflict resolution, and intimacy difficult. *Id.* ¶¶ 27–28.

Doe expressly alleges that, prior to beginning therapy, he did not know the fact of his injury or its causal connection to Ms. Carbone's alleged sexual abuse. *Id.* ¶ 23. In December 2024, Ms. Carbone wrote Doe a letter in which she expressly admits engaging in sexual misconduct with him during his time as a minor in her care. *Id.* ¶ 24; Am. Compl. Exs. A1, A2, ECF No. 21-1.

### B. Procedural History

On April 6, 2025, Doe filed this action, asserting six claims arising from Ms. Carbone's alleged sexual abuse. Compl., ECF No. 1. On May 5, 2025, Ms. Carbone moved to dismiss the Complaint for failure to state a claim. Mot., ECF No. 14. Rather than opposing the motion to dismiss, Doe moved to file an amended complaint (the "First Amended Complaint") on May 26, 2025. Mot., ECF No. 19. The Court granted Doe's motion to amend on May 27, 2025. Order, ECF No. 22; *see* FAC.

On June 10, 2025, Ms. Carbone subsequently moved to dismiss the First Amended Complaint. *See* Mot., ECF No. 23. Therein, she makes two overarching arguments: (1) that the First Amended Complaint is untimely under Virginia Code Ann. § 8.01-249(6) (1997); and (2) notwithstanding the untimely filing, Counts I–V and VII individually fail to state viable claims.[2] *Id.* at 5–17. On June 23, 2025, Doe sought

---

[2] On the individual counts, Ms. Carbone specifically argues that: (1) Doe fails to state a claim for Assault and Battery (Count I); (2) sexual assault and battery (Count II) is not a cause of action recognized in the Commonwealth of Virginia; (3) Doe's negligence per se claims (Counts III–V) fail because the statutes on which they rely have no common law antecedent and intentional torts cannot serve as the basis for a

4

leave to amend the complaint for a second time. Mot., ECF No. 25. On June 30, 2025, Doe filed a response in opposition to the Motion to Dismiss. Resp. Opp'n, ECF No. 31.[3] On July 7, 2025, Ms. Carbone filed a reply in support of the Motion to Dismiss, ECF No. 33, and a response in opposition to the Motion for Leave, ECF No. 34. In her opposition, Ms. Carbone argues that allowing Doe to amend his complaint would be prejudicial and futile because the proposed amended complaint cannot survive the pending Motion to Dismiss. Resp. Opp'n at 4–5, ECF No. 34. Doe filed a reply in support of the Motion for Leave on July 14, 2025. Reply, ECF No. 36.

On November 28, 2025, Doe sought leave to file supplemental briefing in light of the Virginia Supreme Court's decision in *Doe v. Green*, 922 S.E.2d 756 (Va. 2025), which was granted. Mot., ECF No. 38; Mem. Supp. at 1, ECF No. 39; Order, ECF No. 42. Doe filed his supplemental brief on December 16, 2025, and Ms. Carbone responded on December 23, 2025. *See* Pl. Suppl. Br., ECF No. 44; Def. Suppl. Br., ECF No. 46. Although the supplemental briefing specifically addresses the Motion to Dismiss (ECF No. 23), the arguments raised therein necessarily inform the futility

---

negligence per se claim; and (4) Doe does not plead a viable claim for intentional infliction of emotional distress (Count VII). Mot. at 5–17, ECF No. 23.

[3] Also on June 30, 2025, Doe also filed a Motion for Extension of Time to File Response/Reply to the Motion to Dismiss. Mot., ECF No. 32. Therein, Doe requests an extension of time to file a "complete response" to the Motion to Dismiss, "contingent on the Court's ruling on Plaintiff's pending Motion for Leave[.]" *Id.* at 1. Because the instant Order dismisses this action with prejudice, the Motion for Extension of Time (ECF No. 32) is **DENIED as moot**.

analysis underlying Doe's Motion for Leave (ECF No. 25). Both motions are now ripe for adjudication.[4]

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) governs amendment to pleadings prior to trial. Under Rule 15(a), a party may amend its pleading once, as a matter of course, within twenty-one (21) days after service of process or within twenty-one (21) days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally, leave to amend should "be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)). That said, although such motions should be granted liberally, district courts may deny leave to amend for reasons such as (1) undue delay, (2) the movant's bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by allowing the amendment, or (5) futility of the amendment. *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (citing *Foman*, 371 U.S. at 182).

Leave to amend should only be denied for "futility when the proposed amendment is clearly insufficient or frivolous on its face" and cannot survive the motion to

---

[4] The Court has determined that a hearing on the motions is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Civ. R. 7(J).

6

dismiss. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming dismissal of complaint where the proposed amended complaint would fail to withstand a motion to dismiss). Dismissal on statute-of-limitations grounds is rare and appropriate only when the time bar is clear on the face of the complaint. *See Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). And although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by

"legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

### III. ANALYSIS

In both the Motion to Dismiss and the opposition to the Motion for Leave, Ms. Carbone argues that Doe's claims are barred by the statute of limitations set forth in Virginia Code Ann. § 8.01-249(6) (1997). Mem. Supp. at 5–8, ECF No. 24; Resp. Opp'n at 5, ECF No. 34. For the reasons set forth below, the Court agrees.

A proposed amendment is futile if it cannot withstand the motion to dismiss. *Perkins*, 55 F.3d at 917. Both the First Amended Complaint and Second Amended

Complaint rely on substantively identical allegations for accrual purposes.[5] Accordingly, a determination that Doe's claims are time-barred resolves both the Motion to Dismiss and the Motion for Leave. Because the Court finds that the claims are time-barred, the Motion to Dismiss must be granted. And because no amendment can cure this defect, the Motion for Leave must be denied as futile.

Whether a statute of limitations bars a plaintiff's claim depends on two inquiries: (1) when the claim accrued and (2) whether the plaintiff filed suit within the applicable limitations period. *B.T. v. Silver Diner Dev., LLC*, No. 2:22cv94, 2022 WL 3372755, at *4 (E.D. Va. Aug. 16, 2022). If the limitations period expires before the action is filed, dismissal is required. *Id.* Virginia has adopted a specific accrual provision governing claims arising from alleged childhood sexual abuse. *Id.* at *4 (citing *Kopalchick v. Cath. Diocese of Richmond*, 645 S.E.2d 439, 440–41 (Va. 2007)). Under § 8.01-249(6) (1997), such a claim accrues:

> [U]pon the removal of the disability of infancy . . . or, if the fact of the injury and its causal connection to the sexual abuse is not then known, when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist.

---

[5] Because the operative allegations are substantively identical for accrual purposes, the Court addresses the First Amended Complaint and Second Amended Complaint together. The Motion to Dismiss corresponds to the First Amended Complaint. The futility arguments related to the Motion for Leave necessarily require the Court to consider the allegations within the Second Amended Complaint.

Va. Code Ann. § 8.01-249(6) (1997).[6] Once the claim accrues, a plaintiff has two years to file suit. Va. Code Ann. § 8.01-243 (1997)[7]; *Kopalchick*, 645 S.E.2d at 440. Here, Doe alleges that the sexual abuse occurred when he was a minor. FAC ¶¶ 9–19. He reached eighteen years of age—the age of majority in Virginia—in 1999. *Id.* ¶ 19. So, if Doe (1) knew about his injuries and (2) their causal connection to the sexual relationship with Ms. Carbone before he turned eighteen, then he only had until 2001—two years after he turned eighteen in 1999—to file his claims.

For accrual purposes in a tort action, an injury is commonly understood to be a "positive, physical or mental hurt." *Green*, 922 S.E.2d at 763 (citation omitted). "The injury need only be slight; it is immaterial that more substantial damage may occur at a later date." *Id.* (quoting *McHenry v. Adams*, 448 S.E.2d 390, 393 (Va. 1994)). In cases involving psychological harm, courts look to whether the plaintiff was aware of manifestations of injury. *Doe v. Green*, 904 S.E.2d 307, 316 (Va. Ct. App. 2024); *Jurnigan v. Byrum*, No. 1493-23-2, 2025 WL 248194, at *9 (Va. Ct. App. Jan. 21, 2025) (citing Va. Code § 8.01-249(6)). The Court must also independently determine whether the plaintiff made a causal connection between those injuries and the alleged sexual abuse. *Green*, 904 S.E.2d at 316.

---

[6] Doe concedes that *Doe v. Green* affirmed that recent amendments to Va. Code § 8.01-249 are not retroactive because the statute does not contain language "explicitly and unequivocally" demonstrating that the General Assembly intended for the statute to be applied retroactively. Pl. Suppl. Br. at 2, ECF No. 44; *Doe v. Green*, 922 S.E.2d 756, 762 (Va. 2025). Accordingly, the Court applies the 1997 version of the statute.

[7] Doe also concedes that a two-year statute of limitations applies. Pl. Suppl. Br. at 2, ECF No. 44; Va. Code § 8.01-243 (1999).

This case aligns with *Doe v. Green*. In that case, the Virginia Court of Appeals held that claims arising from a sexual relationship between a fifteen-year-old plaintiff and a thirty-three-year-old defendant were time-barred because the plaintiff affirmatively alleged psychological injuries that manifested before she turned eighteen and also connected those injuries to the sexual relationship. *Id.* The manifested injuries identified by the court included: the plaintiff's constant worry about her parents discovering the relationship, anxiety about the inappropriate nature of the sexual abuse, diminished self-esteem, suicidal ideation, increasing family conflict, disengagement from extracurricular activities, and instability following her departure from home. *Id.* The court then emphasized that the plaintiff's anxiety about the inappropriate nature of the sexual abuse demonstrated that she had related her psychological injuries to the sexual relationship with the defendant, establishing the requisite causal connection. *Id.*

The Virginia Supreme Court affirmed. In doing so, it relied on allegations that the plaintiff was "constantly worried about getting in trouble, her lack of control over the relationship, and her parents' reaction if the [sexual relationship] was discovered." *Green*, 922 S.E.2d at 763 (alterations in the original). The court concluded that these allegations demonstrated the plaintiff's conscious awareness that the relationship was having a deleterious effect on her mental health. *Id.*

By contrast, some courts have declined to dismiss claims at the pleading stage where the complaint plausibly alleged a lack of knowledge of the plaintiff's injury or the causal connection between the injury and alleged abuse. In *B.T. v. Silver Diner*

11

*Development, LLC*, the complaint contained allegations of sexual assault, but did not affirmatively allege that the plaintiff understood her injuries to be caused by sexual abuse prior to a later professional diagnosis. 2022 WL 3372755, at *1. Although the complaint made it plausible that the plaintiff could have known of the causal connection between her psychological injuries and the sexual abuse before the diagnosis, the court reasoned that it was also plausible that she had not. *Id.* at *5 ("[O]ne can reasonably infer that [p]laintiff may not have understood (or even known about) her injuries from [defendant]'s conduct until she met with a mental health professional, as she was a 'vulnerable teenager' when [defendant] allegedly abused her").

Similarly, in *Jurnigan v. Byrum*, the complaint contained allegations that could support both inferences that the plaintiff did or did not know about his injuries or the causal relationship of his injuries to the alleged sexual abuse. Specifically, the complaint alleged that the plaintiff had previously written letters noting his inability to "focus in school" because of "flashbacks" about "different abuse scenarios." 2025 WL 248194, at *2. The court noted, though, that the plaintiff's statements in the letters were made shortly after a medical professional first communicated the causal connection between his injuries and the alleged sexual abuse. *Id.* at *10. Confronted with conflicting evidence and allegations, including the plaintiff's own allegations regarding his lack of knowledge and expressed belief that he "thought that he was normal in his thought process and attitude," the court reversed the trial court's decision granting dismissal of the case. *Id.*

The instant case is materially different from both *B.T.* and *Jurnigan*. Here, both the First Amended Complaint and Second Amended Complaint clearly contain affirmative allegations that Doe experienced psychological injuries during his infancy and that he attributed those injuries to his sexual relationship with Ms. Carbone. Demonstrating knowledge of his injuries, Doe alleges that Ms. Carbone's constant instruction to keep the sexual activity a secret instilled an ongoing fear of exposure, reprisal, shame, and the loss of his scholarship and status in the United States throughout the duration of the abuse. FAC ¶ 18; Second Amended Complaint ¶ 20, ECF No. 25-1 ("SAC").[8] These injuries closely mirror those identified in *Green*, including the shared fear of discovery tied to the sexual relationship with the defendant. 922 S.E.2d at 763.

Both the First Amended Complaint and Second Amended Complaint also establish that Doe was aware of the causal connection between his injuries and Ms.

---

[8] In his opposition to the Motion to Dismiss, Doe argues that the Complaint alleges only that Ms. Carbone "attempted to instill" fear in him, not that he actually internalized or experienced fear. Resp. Opp'n at 4, ECF No. 31. However, neither the First Amended Complaint nor the Second Amended Complaint contain the qualifying language that Ms. Carbone merely "attempted" to instill fear in Doe, only that she instilled such fear. FAC ¶ 18; SAC ¶ 20. According to the Merriam-Webster dictionary, the ordinary meaning of instill is to "impart gradually" or to "cause to enter drop by drop." *Instill*, Merriam-Webster Online Dictionary (accessed Jan. 20, 2026), https://www.merriam-webster.com/dictionary/instill; *see also Instill*, Cambridge Dictionary Online (accessed Jan. 20, 2026), https://dictionary.cambridge.org/us/dictionary/english/instill (providing that instill means "to put a feeling, idea, or principle gradually into someone's mind, so that it has a strong influence on the way that person thinks or behaves."). Based on the ordinary meaning of instill, the Court cannot accept Doe's assertion. Doe controlled the language within his pleadings. After two revisions, the Complaint unambiguously alleges that Ms. Carbone instilled fear in him.

Carbone's alleged sexual abuse. For one, Doe expressly ties the instilled fear of shame, exposure, reprisal, and the loss of his scholarship and status in the United States to Ms. Carbone's instruction to keep the sexual nature of their relationship a secret from her husband, Doe's family and friends, school officials, exchange sponsor, and the international scholarship-awarding body. FAC ¶ 18; SAC ¶ 20. Additionally, Doe sought to distance himself from Ms. Carbone due to the nature of their relationship, consciously spending as much time as he could away from the home when he was in college. FAC ¶ 21; SAC ¶ 29. In the Second Amended Complaint, Doe clarifies that he spent as much time away from Ms. Carbone's home as possible because of "a growing desire for personal space and emotional independence, *as well as discomfort with what he perceived as an inappropriate and emotionally complicated 'relationship' with a married adult*." SAC ¶ 30 (emphasis added). Before leaving, Doe confronted Ms. Carbone and extracted a promise that she would not repeat her actions with future exchange students.[9] *Id.* ¶ 31. Even accepting all allegations as true and reading all inferences in Doe's favor, these allegations clearly demonstrate that Doe was aware that the sexual relationship was causing him psychological harm when he was a minor.

---

[9] Although Doe turned eighteen before beginning college, the Court considers the allegations about Doe's actions while in college insofar as they support his allegations related to the time when the abuse occurred (before he turned eighteen). *See* FAC ¶ 18; SAC ¶ 20; *see also Green*, 922 S.E.2d at 763 n.13 (relying on the plaintiff's conduct after she turned eighteen to show that she was aware of the improper nature of her relationship with the defendant well before she filed suit).

14

While the Court is sympathetic to his arguments, Doe's assertion that he did not know the fact of his injury and its causal connection to the sexual abuse until years later is conclusory and cannot overcome the affirmative allegations in the Complaint. SAC ¶ 34; *see E. Shore Mkts., Inc.*, 213 F.3d at 180 (stating that courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). In the Second Amended Complaint, Doe alleges that he first learned "that what he thought of as a [consensual] 'affair' was indeed sexual abuse, and [that] he suffered from injuries causally connected to the abuse" through therapy in 2022. SAC ¶ 34. In making this allegation, Doe urges the Court to treat these manifestations as attributable only to what he then perceived to be a consensual affair.

Even if the Court were to accept Doe's invitation, it does not change the fact that he explicitly ties his experienced harms to his relationship with Ms. Carbone.[10] *Green*, 922 S.E.2d at 763. Indeed, Virginia law only requires that a plaintiff knew of

---

[10] In any event, the Court finds it inconsistent that Doe only understood the relationship was improper because Ms. Carbone was married. Indeed, the Second Amended Complaint explains that he perceived the relationship to be complicated because she was a married *adult*. SAC ¶ 30 (emphasis added). In the opposition brief to the Motion to Dismiss, Doe ostensibly doubles down on the assertion that he contemporaneously understood that his relationship with Ms. Carbone was inappropriate considering "the context of his status as a minor, an international student, and a guest in [Ms. Carbone's] home." Resp. Opp'n at 5, ECF No. 31. Whatever ambiguity might have existed in the Second Amended Complaint, Doe's briefing clarifies. And even if the affair *contributed* to his understanding of the inappropriate nature of the relationship, Doe actually attributes the impropriety of the relationship to *both* the affair *and* his status as a minor. He even extracts a promise from Ms. Carbone not to engage in similar behavior with other exchange students, ostensibly acknowledging her predatory behavior. Attributing his harms to the affair does not take away from also attributing it to the predatory nature of Ms. Carbone's alleged conduct.

15

an injury and attributed that injury to the sexual relationship at issue before turning eighteen. *Id.* (holding that the plaintiff made the requisite causal connection where the plaintiff alleged that she was anxious "about the inappropriate nature of the [sexual relationship]."). Here, Doe did both.

Nor does Doe's allegation that he initially attributed some symptoms—namely, extreme anxiety and periods of diminished concentration, low self-worth, and burn-out—to external stressors negate that he contemporaneously attributed other injuries, including fear of discovery, shame, and reprisal, to his sexual relationship with Ms. Carbone. FAC ¶ 28; SAC ¶ 40. That Doe later experienced additional, more severe, injuries does not change the fact that his claims had already accrued by previously recognizing other injuries.

At bottom, the First Amended Complaint and Second Amended Complaint establish on their face that Doe knew of his injuries during infancy and attributed those injuries to his sexual relationship with Ms. Carbone. Because all claims arise from the same alleged sexual misconduct, they accrued in 1999 when Doe turned eighteen and expired in 2001 when he turned twenty. The claims are therefore barred by the statute of limitations. Accordingly, the Motion to Dismiss must be granted. And because no amendment can cure this defect, the Motion for Leave must be denied as futile.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 23) is **GRANTED** and the Motion for Leave (ECF No. 25) is **DENIED**. Plaintiff's Motion for Extension

of Time to File Response/Reply (ECF No. 32) is **DENIED as moot**. Because the defect in Plaintiff's claims is incurable, the First Amended Complaint is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to close this case. The Clerk is further **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

    **IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

February 12, 2026
Norfolk, Virginia